# CHARLESTON.

LOUVERNIE ELLIS DINGESS *v.* MAGGIE CARTER

(No. 6645)

Submitted September 30, 1930. Decided October 7, 1930.

*C. S. Minter,* for appellant.
*Estep & Bland,* for appellee.

WOODS, JUDGE:

The defendant in the present suit, which was brought to enforce a vendor's lien retained on the face of her deed for the unpaid purchase price, filed an answer and cross-bill setting up claim to an abatement. Plaintiff's title actually covered the tract represented on the map by the letters A, E, F, D. According to the deed, the property is described as beginning at A, "thence running with the upper line of said street to the right of way of what is known as the Island Creek Railway Company (now the C. & O.), thence running with said right of way and up the creek a distance of about 150 feet", etc. The right of way at this point was 60 feet, extending thirty feet each way from the center of the railroad track. Had it been but thirty feet in width, its southern limits would have coincided with line B-C.

The answer and cross-bill avers that the vendor misrepresented the northern boundary of the lot as extending to within 15 feet of the center of the railroad track, i.e. to line B-C and that the purchase was made upon the belief that such representation was true. This appeal is prosecuted from an order of the circuit court of Logan county dismissing the answer and cross-bill.

It is well settled in this state that where a vendee has been induced by false and fraudulent representations of the vendor, to accept a conveyance of land, and afterwards discovers it contains a materially less quantity than represented, equity will give relief by abating the purchase price. *Watring* v. *Gibson*, 84 W. Va. 204. This Court said in that case that this is "the very kind of a wrong a court of equity delights to correct, notwithstanding courts of law may furnish a concurrent remedy." See *Silliman* v. *Gillespie*, 48 W. Va. 374, and *Crislip* v. *Cain*, 19 W. Va. 438. Although vendor here was a married woman she would be liable for any fraudulent representations made by her in respect thereto. 2 Bish. Law of Married Women, sec. 490.

On the issue of misrepresentation, which is controlling here, we find the defendant and her husband asserting and the plaintiff and her husband denying. The defendant states that Mrs. Dingess pointed out, and also put her foot down on, the corner B, or the spot where it should be. She also asserts that certain observations were made in her presence regarding former use of the property E, B, C, F, by other tenants. While plaintiff denies pointing out the corner, she admits she thought the right of way of the railroad extended only 15 feet from the center of the track, i.e. to line B, C. An excerpt from the latter's testimony on this point is illuminating: "Q. At the time the deed was made to you, what was your understanding as to the width of the Chesapeake & Ohio right of way by this property. A. Just what the people talked. They said it was thirty feet. Q. You thought at that time that the railroad company owned fifteen feet on each side of the right of way from the center of the right of way? A. I thought that the people knew what they were talking about. * * * Q. Now at the time you made your deed to Mrs.

Carter for the property now in question you then thought that the right of way was only thirty feet wide? A. I didn't know. I told her I didn't know that that was the talk of the people. Q. And at the time of your sale to her, you thought that the common talk of the people about the width of the right of way was true? A. Well, I didn't know but what it was. I didn't know it wasn't.'' Other testimony of the plaintiff on controlling questions is evasive and unsatisfactory. And in addition, the physical facts bear out the defendant's contention. The surveyor found a hub at B which defendant pointed out to him as the corner given her by the plaintiff. Likewise the main portion of the dwelling house jutted over on the right of way of the railroad property four feet. This dwelling contained two large rooms on that side and the line of the railroad took four feet off both these rooms. The right to ingress and egress, which had formerly been over what was in reality the railway's right of way, was cut off. There is evidence to the effect that other approaches were not as feasible. In the light of the testimony and the nature of the property contracted for, we are of opinion that the defendant has established her contention. The decree of the chancellor must therefore be reversed and the cause remanded with directions to ascertain the amount of abatement to which the defendant is entitled.

*Reversed and remanded.*